UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       *vs.*                              5:14-CR-00018 (DNH)

BONNIE MEISLIN,

              *Defendant.*

**DEFENDANT BONNIE MEISLIN'S
MEMORANDUM OF LAW
IN SUPPORT OF POST-TRIAL MOTIONS**

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................... 1

**ARGUMENT** ................................................................................................................ 1

    A.    A New Trial is Warranted ................................................................................... 1

            1.  It was Error to Permit the Government to Introduce
               Rule 404(B) Evidence ............................................................................... 2

            2.  It was Error to Permit the Government to Introduce Government's Exhibits 50
               and 42 (Medicare Claim Summaries) ....................................................... 6

            3.  An "Aiding and Abetting" Instruction Was Improper ................................. 10

    B.    Defendant is Entitled to A Judgment of Acquittal on All Counts in the Amended
       Superseding Indictment ..................................................................................... 10

            1.  Counts 1, 2, 4, 5, 6, 10–17, 19, 22–30 – Health Care Fraud ............................. 11

            2.  Count 31 – Conspiracy.................................................................................. 18

**CONCLUSION** ........................................................................................................... 20

i

## TABLE OF AUTHORITIES

Cases

*Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)..........................................................5

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).........................................................................10

*United States v Arias-Izquierdo*, 449 F3d 1168, 1184 (11th Cir. 2006)...................................8

*United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) .....................................................10

*United States v Bohrer*, 807 F2d 159 (10th Cir. 1986)............................................................9

*United States v Conlin*, 551 F2d 534, 538-39 (2d Cir. 1977), *cert den.* 434 US 831 ..........7, 8, 9

*United States v. De Villio*, 983 F.2d 1185, 1195 (2d Cir. 1993)..................................................4

*United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. N.Y. 1994)...............................10, 11, 19

*United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) .................................................1, 2

*United States v. Ferguson*, 246 F.R.D. 107, 115 (D.Conn.2007))..............................................4

*United States v. Franklin-El*, 555 F.3d 1115, 1122 (10th Cir. 2009)) ..................................11, 12

*United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) .......................................................4

*United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997)......................................9

*United States v Grossman*, 614 F2d 295 (1st Cir. 1980) ..........................................................9

*United States v. Groysman*, 2011 U.S. Dist. LEXIS 141094, 2-4 (E.D.N.Y. 2011) ...................3

*United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010) .......................................4

*United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) .................................................3

*United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980))................................................1

*United States v. Lorenzo*, 534 F.3d 153, 161 (2d Cir. 2008) ...................................................18

*United States v. Mankani*, 738 F.2d 538, 547 (2d Cir. 1984))............................................11, 19

*United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) ..................................................3

*United States v Modena*, 302 F3d 626, 633 (6th Cir. 2002) ........................................8, 9

*United States v. Monaco*, 194 F.3d 381 (2d Cir. 1999)) ...................................................18

*United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)............................10, 19

*United States v. Newman*, 773 F.3d 438, 455 (2d Cir. N.Y. 2014)..............................18

*United States v Oros*, 578 F3d 703, (7th Cir. 2009) ...........................................................9

*United States v. Rufai*, 732 F.3d 1175, 1189-1190 (10th Cir. 2013) ....................11, 14

*United States v Rangel*, 350 F.3d 648, 651 (7th Cir. 2003)..............................................8

*United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) ......................................1

*United States v. Sachakov*, 812 F. Supp. 2d 198, 213 (E.D.N.Y. 2011).....................11

*United States v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001).......................................18

*United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)).....................................1

*United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) ..............................................3

*United States v. Singh*, 390 F.3d 168, 175-178 (2d Cir. 2004) ...........................16, 17

*United States v. Tawik*, 391 Fed. Appx. 94, 96 (2d Cir. N.Y. 2010) ........................18

*United States v. Wahl*, 563 Fed. Appx. 45, 48-50 (2d Cir. 2014)..................16, 17, 18

*United States v. Wiley*, 846 F.2d 150, 155 (2d Cir. 1988))........................................11

Rules

Advisory Committee's Notes on Fed. Rule Evid. 404(b))..............................................5

Fed. R. Crim P. 29 ...............................................................................................1

Fed. R. Crim P. 29(c) .........................................................................................10

Fed. R. Crim P. 33 ..............................................................................................1

Fed. R. of Evid. 404(b) ............................................................................1, 2, 3, 4, 5

Fed. R. of Evid. 404(b)(1)................................................................................2

Fed. R. Evid. 803(6)........................................................................................9

Fed. R. Evid. 902(11).......................................................................................7

Fed. R. Evid. 1006 ...................................................................................7, 8, 9

Statutes

18 U.S.C. § 2...................................................................................................10

18 U.S.C. §1347.......................................................................................11, 18

Other

Pattern Crim. Jury Instr. 11th Cir. C.1.53 (2010) ......................................11

**PRELIMINARY STATEMENT**

Defendant Bonnie Meislin ("Ms. Meislin") respectfully submits this memorandum of law in support of her post-trial motions.  Ms. Meislin is entitled to a new trial, pursuant to Fed. R. Crim P. 33, because of the improper admission of purported Rule 404(b) evidence, the improper admission of Medicare claim summaries, and because the jury was improperly instructed that it could find Ms. Meislin guilty under an aiding and abetting theory.  Also, as set forth herein, Ms. Meislin is entitled to a Judgment of Acquittal, pursuant to Fed. R. Crim. P. 29, on all counts because the Government's evidence was insufficient to support a finding of guilt.

**ARGUMENT**

**A.    A New Trial is Warranted**

Pursuant to Fed. R. Crim. P. 33, the court may vacate any judgment and "grant a new trial if the interest of justice so requires."  *See* Fed. R. Crim. P. 33.  "This rule by its terms gives the trial court 'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'"  *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)).  "In exercising its discretion, the court is entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.'"  *Sanchez*, 969 F.2d at 1413 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) (affirming district court's decision to grant new trial).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  *Ferguson*, 246 F.3d at 134.  "The district court must examine the entire case, take into account all facts and

circumstances, and make an objective evaluation." *Id.* A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29." *Id.*

For the reasons that follow, allowing the guilty verdicts to stand in this case would amount to a manifest injustice and therefore, the Court should order a new trial.

### 1. It was Error to Permit the Government to Introduce Rule 404(B) Evidence

Pursuant to Rule 404(b) of the Fed. R. of Evid., "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b)(1). Notwithstanding the limiting instruction the Court gave, it was an abuse of discretion to permit the Government to introduce testimonial evidence that in 2006, prior to Ms. Meislin's employment with Upstate Pain Management, and while employed in another medical practice, Ms. Meislin sent bills to insurers falsely representing a physician had performed services when such services had not been performed.

More specifically, the Court allowed the Government to present the testimony of Erica Stell ("Stell"). Stell met Ms. Meislin in 2006 when she was hired to be Ms. Meislin's replacement at another medical office (Transcript, p. 614)[1]. Stell testified that she had only worked for that other physician for ten days and during that time, Ms. Meislin had told her that she double billed medical insurance companies and billed for services that were not actually performed. (Transcript, p. 613, 616). Stell further claimed that Ms. Meislin acknowledged that such action was wrong, but did it anyway because she could not earn as much money elsewhere. (Transcript, p. 617).

---

[1] References to the Trial Transcripts will be noted as "Transcript, p. _____").

The Government failed to proffer a proper purpose for the presentation of such testimony and could not do so. Although the Government asserted that such testimony should be admitted as evidence of lack of mistake, knowledge and intent, it failed to sufficiently articulate how this highly suspect testimony had any relevance to the charges in the Amended Superseding Indictment. (Transcript, p. 71). Such testimony only showed propensity, which is strictly prohibited under Rule 404(b). The Second Circuit has made it clear that Rule 404(b) "is not carte blanche to admit prejudicial extrinsic act evidence when . . . offered to prove propensity." *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012); *see also United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992). Further, other-act evidence should not "undermine the presumption of innocence." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

In *United States v. Groysman*, 2011 U.S. Dist. LEXIS 141094, 2-4 (E.D.N.Y. 2011), the defendant was charged with conspiracy to commit health care fraud, and the Government sought to introduce evidence from a civil lawsuit (involving the billing practices of the defendant's former employer) pursuant to Rule 404(b). The Government argued that the "scheme" alleged in the civil lawsuit (which involved the defendant's former employer) was "essentially the same" as the "scheme" charged in the indictment. *Id.* Specifically, the Government sought to introduce various invoices, claim forms, checks, and testimony from an alleged co-conspirator intending to show the defendant's knowledge and intent to defraud. *Id.* The Court held that "[e]ven assuming the invoices and claims were processed identically in both schemes, the government's position would amount to a separate trial to prove the earlier alleged scheme to have in fact been a scheme." *Id.* Moreover, the Court went on to hold that, "[o]nly then could a comparison be made between the two, and even then, there would first have to be testimony by [the defendant] that she didn't or couldn't understand the operation of the scheme alleged in this indictment." *Id.*

3

(citing *United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010) (Seybert, J.) (finding inadmissible alleged former scheme because the alleged [former] scheme involved separate, discrete incidents of alleged fraud or deceit, not conduct that was inextricably intertwined with the indictment's charges or necessary to complete the indictment's story.) (citing *United States v. Ferguson*, 246 F.R.D. 107, 115 (D.Conn.2007)); *see also United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) (explaining that "the government may not invoke Rule 404(b) and proceed to offer, *carte blanche*, any prior act of the defendant in the same category of crime," without identifying "a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act"); *United States v. De Villio*, 983 F.2d 1185, 1195 (2d Cir. 1993) (finding error in district court ruling permitting instrumentalities of burglary to be admitted where crimes charged involve the unlawful transport of stolen goods and vehicles)) (internal quotation marks omitted).

The alleged Medicare scheme at issue here did not involve billing Medicare for services that were not rendered. (Transcript, p. 418). Instead, the alleged fraud centered around a Medicare guideline allowing physician assistants ("PA") and nurse practitioners ("NP") to bill under the physician's Medicare identifier when services were rendered "incident to" that physician's services. Without any documentary or other evidence that false billing ever occurred at the prior physician's office, there is no way that the billing at that physician's office could have provided knowledge of the Medicare "incident to" guideline, particularly in light of the fact that the practice did not employ a PA or NP and the "incident to" guideline does not apply to any practitioners other than a PA or NP (also known as "extender services"). (Transcript, p. 486-487). As such, the Government failed to show that a proper purpose existed for the admission of such evidence.

Stell's testimony also failed to meet the "relevancy" requirement of Rule 404(b) because the alleged conduct, if it occurred at all, took place more than three years before the charged conduct and was wholly unsubstantiated.

In any event, the prejudicial effect of such evidence far outweighed any probative value. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988) (citing Advisory Committee's Notes on Fed. Rule Evid. 404(b)).  Ms. Meislin could not effectively defend herself against this eleventh hour allegation of involvement in a wholly separate fraudulent billing scheme.  The Government's testimonial evidence of an alleged, separate billing scheme lacked any substantiation or corroboration whatsoever.  Further, the alleged conduct occurred more than eight years before Ms. Meislin's trial and the Government did not provide notice of its intent to use such evidence until the Government filed its trial memorandum. (Transcript, p. 72).[2]

The Court's limiting instruction did not, and could not, ameliorate the severe and undeniable prejudice accompanying the admission of such testimony where the issue for the jury was Ms. Meislin's intent to engage in fraudulent billing.  Such testimony undoubtedly undermined Ms. Meislin's presumption of innocence and was at the very least, misleading and confusing to the jurors.

For all of these reasons, Stell's testimony should have been excluded and the admission of such testimony deprived Ms. Meislin of a fair trial.  Therefore, Ms. Meislin is entitled to a new trial.

---

[2] The Government provided a memorandum of Ms. Stell's interview with federal agents dated June 26, 2008.

### 2. It was Error to Permit the Government to Introduce Government's Exhibits 50 and 42 (Medicare Claim Summaries)

Similarly, Government's Exhibits 50 and 42 should not have been admitted into evidence and the admission of those exhibits deprived Ms. Meislin of a fair trial, including her right to confront the evidence presented against her.

Penni Conley, a fraud investigator with Safeguard Services, testified that Government Exhibit 50, which was a compact disc (CD), contained all of the claims submitted from Upstate Pain Management to Medicare from November 1, 2009, through May 31, 2012 (Transcript, pp. 371, 383). Conley told the jury that she obtained and/or prepared the information contained in Government Exhibit 50 from a "data warehouse" controlled by Safeguard Services (Transcript, pp. 383-384, 405). Conley testified that Government Exhibit 42 contained "isolated 99214s and 99215s from the time period that Doctor Kuthuru was not in New York," and that she "participated in putting together" Government's Exhibit 42 (Transcript, p. 388). Government's Exhibits 42 and 50 are collectively referred to as "Medicare Summaries."

Although Conley testified that Upstate Pain Management submitted its claims to Medicare in paper and electronic format, the Government did not provide the defense with all of the Health Care Financing Administration ("HFCA") Form 1500's (now known as CMS Form 1500) for the relevant time period, which are components of the claims submitted to Medicare. (Transcript, pp. 372, 402-3). Conley also testified that she was unable to obtain the electronic copies of those claims Upstate Pain Management submitted to National Government Services. (Transcript, p. 406).

The Government's failure to provide all of the documents underlying the Medicare Summaries or a custodian of National Government Services to testify as to the process of submission of the claims to Medicare or the transmittal of such information to the "data

6

warehouse" controlled by Safeguard Services, should have precluded the admission of these exhibits.

Instead of obtaining or making the underlying documents available, the Government sought the admission of the Medicare Summaries through certification pursuant to Fed. R. Evid. 902(11) characterizing the Medicare Summaries as "business records." By letter dated February 2, 2015, the Government provided Defense counsel with a certification for Government Exhibit 42, which noted that the data contained in Exhibit 42 was "queried on June 11, 2012." However, Government Exhibit 42 was further "revised" on numerous occasions, including the day prior to trial and some of the "revised" versions contained additional claims and data.[3]  Government Exhibit 50 was received into evidence pursuant to certification. (Transcript, pp. 68-71).  Later, the Government claimed that it had made an error in referencing Exhibit 50 as being the subject of the certification. (Transcript, p.623-625).   Defense counsel never received a certification regarding Government Exhibit 50.  Exhibit 50 should not, therefore, have been admitted.

The Medicare Summaries are also inadmissible under Rule 1006 of the Federal Rules of Evidence.  Rule 1006 states as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

As the Second Circuit has noted, "[a] chart submitted by the prosecution is a very persuasive and powerful tool and must be fairly used, since, by its arrangement and use, it is an argument to the jury during the course of the trial." *United States v Conlin*, 551 F2d 534, 538-39

---

[3] Conley testified that she "ran the data once" and thereafter provided the information to the Government for further editing and revising. (Transcript, pp. 407-408).

(2d Cir. 1977), *cert den.* 434 US 831. "A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error." *Id.* (concluding that it was error for the district court to admit summary charts because the Court failed to first "ascertain with certainty that they [were] based upon and fairly represent competent evidence already before the jury").

Six foundational requirements must be satisfied before a summary chart may be admitted into evidence. First, the proponent must prove that the originals or duplicates used to create the charts cannot be conveniently examined in court. *See* Fed. R. Evid. 1006; *United States v Modena*, 302 F3d 626, 633 (6th Cir. 2002). Second, the proponent must make the originals or duplicates used to create the charts available for examination before trial. The burden is on the proponent of the chart to make the originals or duplicates available, and the failure to comply with this requirement is grounds for not allowing the charts to be admitted into evidence. *See United States v Modena*, 302 F3d 626, 633 (6th Cir. 2002) ("The government . . . had a duty to 'state when and where' the documents underlying its summaries could be viewed, without regard to whether Modena made a request for these records. . . . Moreover, the Statement of Discovery filed by the government provided that Modena could inspect the documents only if he allowed the government to examine the materials that Modena planned to introduce at trial. Nothing in Rule 1006 indicates that the right to examine or copy records underlying a summary may be conditioned in such a manner. . . . The district court therefore erred in admitting the challenged summaries into evidence"); *United States v Rangel*, 350 F3d 648, 651 (7th Cir. 2003) (stating that the "reasonable time and place" requirement of Fed. R. Evid. 1006 "has been understood to be such that the opposing party has adequate time to examine the records to check the accuracy of the summary"); *United States v Arias-Izquierdo*, 449 F3d 1168, 1184 (11th Cir. 2006)

(concluding that it was error for the district court to admit summary charts where the government did not provide defendants with original handwritten records or any duplicates of those originals before seeking admission of summary at trial).

Third, the originals or duplicates on which the charts are based must themselves be admissible (though they need not be admitted). *United States v Modena*, 302 F3d 626, 633 (6th Cir. 2002). Thus, proof that these documents satisfy the business records exception to the hearsay rule is required. *See United States v Oros*, 578 F3d 703, (7th Cir. 2009) (concluding that, because the government neither presented a witness to establish that charts summarizing telephone and bank records were kept in course of regularly conducted business activity, government did not satisfy Fed. R. Evid. 803(6)'s foundational requirements, and summary charts should not have been admitted pursuant to Fed. R. Evid. 1006). The mere presence of a document - no matter what its authorship - in the retained files of a business entity does not by itself qualify that document as a record of "regularly conducted activity." In addition, business records prepared for purposes of litigation are inadmissible. *United States v Grossman*, 614 F2d 295 (1st Cir. 1980); *United States v Bohrer*, 807 F2d 159 (10th Cir. 1986).

Fourth, before admitting the summary charts, there must have already been admitted into evidence fairly represented competent evidence on which the charts are based. *United States v Conlin*, 551 F2d 534,(2d Cir. 1977), *cert den.* 434 US 831. Fifth, the proponent must make available for cross-examination the person who prepared the charts. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997). Sixth, the summary must be accurate and nonprejudicial. *United States v Modena*, 302 F3d 626, 633 (6th Cir. 2002).

Admission of Government Exhibits 42 and 50 into evidence, without meeting the requirements of Rule 1006 or without a proper authentication, deprived Ms. Meislin of her Sixth

Amendment right to cross examine the evidence against her. Without having access to all of the documents underlying the Government's Medicare Summaries, the Defense could not verify the accuracy or reliability of those documents.

For these reasons, it is respectfully submitted that the Medicare Summaries were improperly admitted into evidence at trial and Ms. Meislin is entitled to a new trial.

### 3.   An "Aiding and Abetting" Instruction Was Improper

The Jury was improperly given an "aiding and abetting" instruction under 18. U.S.C. § 2, in connection with Counts 1, 2, 4, 5, 6, 10–17, 19, and 22–30 of the Amended Superseding Indictment.  Pursuant to 18 U.S.C. § 2, "[w]hoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal."  18 U.S.C. § 2.  An "aiding and abetting" instruction was not warranted here because there was insufficient evidence to prove Ms. Meislin knew anyone was committing an offense against the United States.

### B.   Defendant is Entitled to A Judgment of Acquittal on All Counts in the Amended Superseding Indictment

On a motion pursuant to Fed. R. Crim. P. 29(c), the district court must grant a judgment of acquittal if it determines that no rational trier of fact could have found all elements of each charged offense were proven beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The Government need not negate every theory of innocence. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).  However, if the evidence gives equal or nearly equal support to theories of guilt or innocence, then the district court must presume that the jury contemplated reasonable doubt and grant a judgment of acquittal. *See generally United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. N.Y. 1994) (citing *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991) (quoting

*United States v. Mankani*, 738 F.2d 538, 547 (2d Cir. 1984)).  "[A] conviction based on speculation and surmise alone cannot stand." *D'Amato*, 39 F.3d at 1256 (citing *United States v. Wiley*, 846 F.2d 150, 155 (2d Cir. 1988)).

For the reasons set forth below, a rational jury could not conclude that the Government proved guilt beyond a reasonable doubt on all counts in the Amended Superseding Indictment. Accordingly, a judgment of acquittal is warranted on all counts.

1.    <u>Counts 1, 2, 4, 5, 6, 10–17, 19, 22–30  – Health Care Fraud</u>

Counts 1, 2, 4, 5, 6, 10–17, 19, and 22–30 charged Ms. Meislin with health care fraud pursuant to 18 U.S.C. § 1347.  Pursuant to 18 U.S.C. § 1347, the Government must prove that Ms. Meislin (1) knowingly and willfully executed, or attempted to execute, a scheme or artifice to defraud a health-care benefit program, [or to obtain money or property owned by, or under the custody or control of, a health-care benefit program] by means of false or fraudulent pretenses, representations, or promises; (2) the false or fraudulent pretenses, representations, or promises related to a material fact; (3) the defendant acted willfully and intended to defraud; and (4) the defendant did so in connection with the delivery of or payment for health-care benefits, items, or services. *See* 18 U.S.C. § 1347; *see also* Pattern Crim. Jury Instr. 11th Cir. C.1.53 (2010).

Health care fraud is a specific intent crime, and therefore, the Government was required to prove that Ms. Meislin acted with knowledge that her conduct was unlawful. *See United States v. Rufai*, 732 F.3d 1175, 1189-1190 (10th Cir. 2013) (quoting *United States v. Franklin-El*, 555 F.3d 1115, 1122 (10th Cir. 2009)); *see also United States v. Sachakov*, 812 F. Supp. 2d 198, 213 (E.D.N.Y. 2011) (holding that the health care fraud statute requires a specific intent to defraud or misrepresent, and in discussing the constitutionality of the statute, noting that "[a]lthough a specific intent requirement does not necessarily validate a criminal statute against

all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware...." (citing *United States v. Franklin-El*, 554 F.3d 903, 911 (10th Cir. Kan. 2009)).

The scheme alleged in the Amended Superseding Indictment did not involve billing Medicare for services that were not actually performed. In fact, the Government's evidence showed that services were performed and provided by licensed medical professionals. Rather, the purported scheme, was that Ms. Meislin knowingly and willfully executed a scheme to defraud Medicare, by improperly billing Medicare for services performed by a PA or NP at a higher reimbursement rate. The alleged fraudulent bills were submitted under Dr. Kuthuru's name and Medicare identifier. (Transcript, pp. 417-418).

Without any evidence that Ms. Meislin was aware of, or understood Medicare's "incident to" billing guidelines, the Government has alleged, and attempted to prove, that Ms. Meislin knowingly acted contrary to this guideline. Medicare permits the billing of services of a PA or NP under a physician's identifier if the physician provided "direct supervision" and the PA or NP were properly credentialed with Medicare. (Transcript, pp. 376-380, 417). When the "incident to" requirements are met, a visit with a PA or NP can be reimbursed at one hundred percent of the physician fee schedule. (Transcript, pp. 417, 651-652, 654).

The Government's evidence fell far short of proving either a scheme or that Ms. Meislin had the specific intent to commit health care fraud. To uphold her conviction, is to punish her for a crime for which she was unaware and did not commit. While numerous witnesses testified that Ms. Meislin was the "billing manager" of Upstate Pain Management, their definitions of exactly what that meant varied widely. Beyond that, the Government failed to elicit testimony

from those witnesses that Ms. Meislin directed them to bill for PA or NP services using Dr. Kuthuru's Medicare identifier.

Instead, the Government's own evidence shows that such direction from Ms. Meislin was not necessary. This is because the only way that Upstate Pain Management could bill for services of a PA or NP was under Dr. Kuthuru's Medicare identifier as none of the other licensed providers were credentialed with Medicare (Transcript, pp. 381-382, 417). If the other providers were not credentialed and did not have a provider number, Upstate Pain Management could not bill for services rendered when Dr. Kuthuru did not directly supervise such services. (Transcript, p. 417). Ms. Meislin was not integral to any scheme – billing at Upstate Pain Management would have remained the same even without Ms. Meislin. In fact, that is how billing occurred at Dr. Kuthuru's Las Vegas office (Transcript, p. 58-61). The office manager from that office testified that he was not aware of any problem with billing under the practice's Medicare identifier for services rendered by a NP when Dr. Kuthuru was out of the office and that Ms. Meislin had nothing to do with the Las Vegas office's billing practices. (*Id.*)

The Government's only evidence that Ms. Meislin even had any possible awareness of Medicare's "incident to" guideline was testimony from two witnesses – Conley and Physician Assistant Maynard Shumway.

Shumway claimed that he, as a licensed medical professional, knew bills were being submitted to Medicare improperly and as a result, provided Ms. Meislin with a copy of Medicare's "incident to" billing "regulations" sometime in the year 2010. (Transcript, p. 518). Shumway further claimed that Ms. Meislin said she would look into the "concern" he raised. *Id.* Significantly, Shumway never provided a copy of what he purports to have given to Ms. Meislin nor did the Government offer anything besides his testimony on this point. (Transcript, p. 564).

The Government's attempt to infer Ms. Meislin's knowledge of Medicare's "incident to" guideline is not sufficient to meet its burden to prove Ms. Meislin's specific intent, beyond a reasonable doubt.

The *Rufai* case speaks to the insufficiency of the Government's evidence regarding Ms. Meislin's intent. *United States v. Rufai*, 732 F.3d 1175 (10th Cir. 2013) at 1192-1194. In *Rufai*, the Tenth Circuit found evidence that a witness expressed suspicion about a wrongdoer to the defendant was insufficient to infer knowledge and willful intent to participate in a fraudulent Medicare scheme. *Id.* The *Rufai* case involved a medical equipment company submitting false reimbursement claims to Medicare. *Id.* An individual by the name of Ohaka was heavily involved in the company's management and filing fraudulent Medicare claims. *Id.* In an effort to prove the defendant's knowledge and willful intent to participate in Ohaka's fraudulent scheme, the Government relied, in part, on the testimony of a witness who said she advised the defendant (before the company was approved to bill Medicare) that she received calls from customers who had not received their medical equipment. The defendant responded by saying that he would speak with Ohaka. *Id.* The court held that the government was stretching the witness's testimony too far in inferring knowledge and willful intent based on said conversation. *Id.* Specifically, the court found that the witness's testimony may have been enough to suggest something was amiss with Ohaka and the Company, but the conversation could not have made him aware of fraudulent billing. *Id.*

Likewise, Shumway, who was a licensed PA, claimed that he provided Ms. Meislin with a copy of the Medicare "incident to" regulations – without more – is insufficient to infer Ms. Meislin's knowledge and willful intent to defraud Medicare. This is especially so because Shumway, as a licensed medical professional, was responsible to make sure he was properly

credentialed while at Upstate Pain Management and must have known that he was not ever credentialed while working there. (Transcript, pp. 411, 417, 552-553).   As a licensed medical professional, Shumway routinely treated patients while Dr. Kuthuru was not in the office suite and provided superbills to billing personnel without indicating that the claims needed to be billed under his Medicare identifier.

Conley's testimony also is insufficient proof of Ms. Meislin's intent.   Conley claimed that during a telephone call on November 13, 2012, Ms. Meislin told her that she "knew all about Medicare," was "very familiar with Medicare," and that she visited the Medicare website "frequently." (Transcript, pp. 392-393). Conley also claimed that she explained to Ms. Meislin "that there is a violation of Incident To" and claimed that Ms. Meislin told her that she knew all about "this" and it was just an "oversight." (Transcript, pp. 392-394). On cross-examination, Conley also claimed that Ms. Meislin specifically told her that she was responsible for the credentialing of providers at Upstate Pain Management during an interview on November 14, 2012.  However, Conley's own memorandum of interview of Ms. Meislin reports no such thing. Conley's testimony, which lacked credibility in several key respects, is insufficient to establish that Ms. Meislin had the requisite knowledge and understanding of Medicare's "incident to" guideline and more importantly, the specific requirements of "direct supervision" and the extender credentialing requirement.

In sum, the Government's evidence failed to show that Ms. Meislin was aware of Medicare's "incident to" billing requirements, including the specific requirements of that guideline.  Evidence that Ms. Meislin was involved in Upstate Pain Management's billing is simply not enough.

Second Circuit cases, including *United States v. Singh*, 390 F.3d 168, 175-178 (2d Cir. 2004) and *United States v. Wahl*, 563 Fed. Appx. 45, 48-50 (2d Cir. 2014), finding sufficient evidence and upholding substantive health care fraud convictions are easily distinguishable. For instance, in *Singh*, the Second Circuit upheld a defendant physician's conviction based on a finding that there was sufficient evidence to prove he intentionally defrauded Medicare. *See United States v. Singh*, 390 F.3d 168, 175-178 (2d Cir. 2004). The defendant physician owned and operated a pain management practice that employed other non-physician providers and nurses, who routinely treated patients during follow-up visits (without a physician). *Id.* Specifically, nurses had their own patient schedule and, pursuant to an internal office policy, the nurses were required to see fifteen patients per day. *Id.* The services were then billed under "evaluation and management" CPT codes, named 99214 and 99215. *Id.* Yet, CPT code 99211 is the only code that permits a nurse to treat a patient, and even then it is only permitted if the nurse is rendering the service under a physician's "supervision." *Id.*

The defendant argued that the billing codes and rules were ambiguous, and therefore, precluded a finding of fraudulent intent. *Id.* at 187 – 189. However, the Second Circuit rejected defendant's argument as the following evidence was sufficient to establish his fraudulent intent: (1) CPT code 99211 was the only proper billing code for visits conducted by nurses in limited circumstances, yet the defendant instructed his staff to "upcode" or bill at higher codes for nurse visits; (2) the defendant instructed nurses to include information in their notes suggesting that he had been involved in the visit; (3) following a visit by an investigator, the defendant told a nurse that it was "good" she altered patient charts to represent that the nurse had consulted the defendant; (4) a search of the defendant's home revealed computerized records reflecting income generated by his nursing staff; and (5) the defendant had detailed discussions with his employees

regarding his billing expectations. *Id.* Moreover, defendant was a licensed medical provider and admitted that he "was familiar with the CPT Guidebook, which was kept in his office and referred to for billing purpose." *Id.* The defendant further admitted that he had a separate billing manual relating to pain management services. *Id.*

The absence of any direct evidence whatsoever that Ms. Meislin knew of or understood Medicare's "incident to" requirements, much less instructed others to bill under Dr. Kuthuru's Medicare identifier clearly distinguishes this case from *Singh*. And, unlike the defendant in *Singh*, Ms. Meislin was not a licensed medical professional and did not financially benefit from Upstate Pain Management's improper billing of "incident to" services.

In *United States v. Wahl*, the Second Circuit also upheld a physician's conviction of health care fraud, finding that sufficient evidence was offered that he knowingly and willfully participated in a scheme to defraud Medicare. *See United States v. Wahl*, 563 Fed. Appx. 45, 48-50 (2d Cir. 2014). There, unlike here, the Government presented the following evidence showing that: (1) the defendant physician incorporated a New York medical clinic and had signed applications permitting the clinic to obtain Medicare reimbursement; (2) the defendant physician rarely treated patients at the clinic, yet still collected a salary in the amount of $12,166 per month between January 2007 and June 2010; and (3) another individual expressly warned the defendant physician of a kickback scheme that was occurring at the clinic. *Id.* Despite the fact that the defendant physician rarely saw patients, the clinic billed Medicare approximately $20,932,044.00 for office visits under the defendant physician's identification number. *Id.* The evidence showed that individuals without medical degrees were generating false Medicare claim forms and impersonating a doctor. *Id.* And the clinic was paying as much as $12,500 per day in

kickbacks to patients who attended the clinic. *Id.* Based on the foregoing, the Second Circuit found that the evidence was sufficient to prove the substantive offense of health care fraud. *Id.*

Simply put, no rational trier of fact could have found all elements of 18 U.S.C. § 1347 beyond a reasonable doubt as the Government failed to present sufficient evidence that Ms. Meislin knowingly and willfully executed a scheme to defraud Medicare.

## 2.    <u>Count 31 – Conspiracy</u>

"To prove conspiracy, the government must show that [a] defendant agreed with another to commit the offense; that he knowingly engaged in a conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *See United States v. Tawik*, 391 Fed. Appx. 94, 96 (2d Cir. N.Y. 2010) (quoting *United States v. Monaco*, 194 F.3d 381 (2d Cir. 1999)); *see also United States v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001); *United States v. Newman*, 773 F.3d 438, 455 (2d Cir. N.Y. 2014). Here, Defendant recognizes the longstanding rule that a knowing agreement to join a conspiracy is often proved through circumstantial evidence. *See Wahl*, 563 Fed. Appx. at 49-50 (citing *United States v. Lorenzo*, 534 F.3d 153, 161 (2d Cir. 2008). Yet circumstantial or not, the Government failed to prove that Ms. Meislin agreed with Dr. Kuthuru to commit Medicare fraud or that Ms. Meislin knowingly engaged in a conspiracy with Dr. Kuthuru with the specific intent to commit Medicare fraud.

It is well settled that when the Government fails to prove that the defendant had the intent to commit the underlying offense, a conspiracy conviction cannot be sustained. *See Newman*, 773 F.3d at 455 (where the Second Circuit reversed defendants' convictions of conspiracy to commit insider trading because the Government failed to demonstrate that the defendants had the intent to commit insider trading)

As for evidence of an alleged agreement, the only evidence the Government presented was the testimony of Brittany Hosea, an employee who worked in Upstate Pain Management's Fulton office from July through October 2010.  Hosea, whose duties did not include billing, claimed that on one occasion, when Ms. Meislin asked her for some patient notes (which Hosea could not find) Ms. Meislin told her that she had to make the notes appear.  (Transcript, p. 220-223).  Hosea testified that she thought Ms. Meislin was asking her to commit fraud and that she ended up hanging up the phone on Ms. Meislin and going to lunch.  (Transcript, pp. 223, 225).  Hosea further claimed that when she returned from lunch Dr. Kuthuru had called for her.  She testified that when she spoke with Dr. Kuthuru, he asked her if she had a problem, and she told him there was no problem that she would not commit what she thought was fraud, and she quit her employment.  (Transcript, p. 226).

Ms. Hosea's account, the Government's sole evidence of an alleged conspiracy, even with her claimed concerns that she was being asked to partake in a fraud, is equally susceptible to an entirely innocuous interpretation.  Since such testimony gives equal or nearly equal support to theories of guilt or innocence, this Court must presume that the jury contemplated reasonable doubt and grant a judgment of acquittal.  *See generally United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. N.Y. 1994) (citing *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991) (quoting *United States v. Mankani*, 738 F.2d 538, 547 (2d Cir. 1984)).

Here, no evidence supports a finding that Ms. Meislin was aware of the object of the conspiracy nor is there any evidence that she took any action whatsoever to facilitate the objective of any alleged conspiracy.   Thus, a judgment of acquittal should be entered on the conspiracy count.

## CONCLUSION

For the reasons set forth above, the Defendant is entitled to a judgment of acquittal, or, alternatively, a new trial.

Dated:  April 3, 2015

ZIMMER LAW OFFICE, PLLC
Counsel for Defendant Bonnie Meislin

By: _____
Kimberly M. Zimmer, Esq.
Bar Roll No.: 505346
Office and P.O. Address
120 East Washington Street, Suite 815
Syracuse, New York 13202
Telephone:  (315) 422-9909
kmz@kimzimmerlaw.com

Brittany E. Aungier, Esq.
Bar Roll No.: 517395
Hiscock & Barclay, LLP
One Park Place
300 South State Street
Syracuse, NY 13202
Telephone: (315) 425-2859
baungier@hblaw.com